**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| FARMOBILE LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>FARMERS EDGE INC. AND FARMERS EDGE (US) INC.<br><br>    Defendants. | Civil Action No. 2:21-cv-00411-JRG<br><br>JURY TRIAL REQUESTED<br><br>███████████ |

**DEFENDANTS' MOTION TO TRANSFER TO THE DISTRICT OF NEBRASKA
PURSUANT TO 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

I.      INTRODUCTION ............................................................................................... 1

II.     STATEMENT OF FACTS ................................................................................. 1

        A.      Farmobile and the Asserted Patents ...................................................... 1

        B.      Farmers Edge and the Accused Products ............................................... 2

        C.      Prior Litigation between Farmobile and Farmers Edge ......................... 4

III.    LEGAL STANDARD ........................................................................................ 5

IV.     ARGUMENT ..................................................................................................... 6

        A.      This Action Could and Should Have Been Brought in Nebraska .......... 6

        B.      All Private-Interest Factors Favor Transfer ......................................... 8

                1.      The Relevant Evidence Is in Nebraska, Not in This District .................... 8

                2.      The District of Nebraska Has Compulsory Power over Non-Party
                        Witnesses, Whereas This Court Does Not .................................. 9

                3.      Nebraska Is More Convenient for Potential, Relevant Witnesses ........... 11

                4.      The District of Nebraska Is Already Familiar with the Parties,
                        Named Inventors, and Accused Products .................................. 12

        C.      All Public-Interest Factors Favor Transfer or Are Neutral .................. 13

                1.      Court Congestion Is Neutral .................................................. 13

                2.      Nebraska Has a Local Interest in This Case .............................. 14

                3.      Factors 3 and 4 Are Neutral .................................................. 15

V.      CONCLUSION ............................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Affinity Labs of Tex. v. Samsung Elecs. Co.*,
968 F. Supp. 2d 852 (E.D. Tex. 2013) ...................................................................10

*In re Apple Inc.*,
No. 2021-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ................................9, 10, 13, 14

*In re Atlassian Corp. PLC*,
No. 2021-177, 2021 WL 5292268 (Fed. Cir. Nov. 15, 2021) ................................14

*In re Cray Inc.*,
871 F.3d 1355 (Fed. Cir. 2017)...........................................................................7

*In re DISH Network L.L.C.*,
No. 2021-182, 2021 WL 4911981 (Fed. Cir. Oct. 21, 2021).............................13, 14

*Farmers Edge Inc. v. Farmobile LLC*, No.
8:16-CV-00191-JFB-SMB (D. Neb.) ...............................................................4, 5, 12

*In re Genentech, Inc.*,
566 F.3d 1338 (Fed. Cir. 2009)....................................................................8, 11, 13

*In re Google LLC*,
949 F.3d 1338 (Fed. Cir. 2020)...........................................................................7

*In re Google LLC*,
No. 2021-178, 2021 WL 5292267 (Fed. Cir. Nov. 15, 2021) ...............................8, 12

*HollyAnne Corp. v. TFT, Inc.*,
199 F.3d 1304 (Fed. Cir. 1999)...........................................................................7

*In re HTC Corp.*,
889 F.3d 1349 (Fed. Cir. 2018)...........................................................................6

*In re Hulu, LLC*,
No. 2021-142, -- F. App'x --, 2021 WL 3278194 (Fed. Cir. Aug. 2, 2021)...........................10

*HVLPO2, LLC v. Oxygen Frog*,
LLC, 187 F. Supp. 3d 1097 (D. Neb. 2016) .......................................................7

*In re Netflix, Inc.*,
No. 2022-110, 2022 WL 167470 (Fed. Cir. Jan. 19, 2022) ...............................9, 11

*NexLearn, LLC v. Allen Interactions, Inc.*,
859 F.3d 1371 (Fed. Cir. 2017)..........................................................................7

*In re Nintendo Co.*,
589 F.3d 1194 (Fed. Cir. 2009)..........................................................................6

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
626 F.3d 1222 (Fed. Cir. 2010)..........................................................................8

*Oyster Optics, LLC v. Coriant Am. Inc.*,
No. 2:16-cv-1302, 2017 WL 4225202 (E.D. Tex. Sept. 22, 2017).................6, 15

*Quest NetTech Corp. v. Apple, Inc.*,
No. 2:19-CV-00118-JRG, 2019 WL 6344267 (E.D. Tex. Nov. 27, 2019)............12

*In re Radmax, Ltd.*,
720 F.3d 285 (5th Cir. 2013) .........................................................................6, 11

*In re Samsung Elecs. Co.*,
2 F.4th 1371 (Fed. Cir. 2021) ............................................................................13

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
137 S. Ct. 1514 (2017).........................................................................................6

*In re Toa Techs., Inc.*,
543 F. App'x 1006 (Fed. Cir. 2013) ....................................................................14

*In re TS Tech USA Corp.*,
551 F.3d 1315 (Fed. Cir. 2008)..........................................................................15

*Unicorn Energy GMBH v. Tesla, Inc.*,
No. 2:20-CV-00338-JRG, 2021 WL 4034515 (E.D. Tex. Sept. 3, 2021) ...............8, 10, 11, 14

*Uniloc USA, Inc. v. Apple Inc.*,
No. 2:17-CV-00258-JRG, 2017 WL 11553227 (E.D. Tex. Dec. 22, 2017) ...........15

*Viking Techs., LLC v. Assurant, Inc.*,
No. 2:20-CV-00357-JRG, 2021 WL 3520756 (E.D. Tex. June 21, 2021) .............6

*In re Vistaprint Ltd.*,
628 F.3d 1342 (Fed. Cir. 2010)..........................................................................12

*In re Volkswagen AG*,
371 F.3d 201 (5th Cir. 2004) .....................................................................5, 6, 14, 15

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (5th Cir. 2008) .........................................................................6, 11

**Statutes**

28 U.S.C. § 1338.................................................................................................6

28 U.S.C. § 1400(b).........................................................................................6, 7

28 U.S.C. § 1404(a)............................................................................................5

**Rules**

D. Neb. L.R. 1.4(4)(B)......................................................................................13

D. Neb. L.R. 1.4(4)(C)(iii)...............................................................................12

## I.    INTRODUCTION

As explained in the motion to dismiss filed concurrently by Farmers Edge Inc. and Farmers Edge (US) Inc. (collectively "Farmers Edge"), venue is improper in this District for Farmobile's claims against Farmers Edge (US) Inc.  Even though Farmers Edge Inc. can be sued in this District because it is a Canadian entity, this Court should transfer the entire case to the District of Nebraska, where the majority of relevant witnesses and evidence for Farmers Edge are located.  Moreover, the District of Nebraska, unlike this District, has subpoena power over multiple non-party witnesses, including two named inventors of the Asserted Patents.  Further, the parties previously were involved in extensive litigation in the District of Nebraska over issues related to the Asserted Patents that are likely to arise in this case.

This case has little, if any, connection to this District.  The Farmers Edge entities do not have a single physical location or employee in this District.  In addition, Farmobile has no discernable connection to or interest in this District.  Given that the case could have been brought in the District of Nebraska and the private- and public-interest factors overwhelmingly favor transfer, Farmers Edge respectfully requests that the Court transfer this case to the District of Nebraska, which is "clearly the more convenient" forum for this dispute.

## II.    STATEMENT OF FACTS

### A.    Farmobile and the Asserted Patents

Farmobile is organized under Kansas law, with its principal place of business in Leawood, Kansas.  Dkt. No. 1 ("Compl.") ¶ 1.  Farmobile asserts infringement of five related patents ("Asserted Patents").  Compl. ¶¶ 2, 35, 49, 61, 79, 91.  The Asserted Patents name three inventors: Heath Gerlock, Randy Nuss, and Jason Tatge.  Compl., Exs. A–E.  None of these named inventors appears to live in this District.  Declaration of Nathan S. Mammen ("Mammen Decl.") ¶¶ 2–4; Mammen Exs. 1–3.  Specifically, Gerlock and Nuss both appear to reside in Nebraska, while Tatge

resides in Kansas.  Mammen Decl. ¶¶ 2–4; Mammen Exs. 1–3; *see also* Compl., Exs. A–E (noting that Gerlock and Nuss's residences were in Omaha, Nebraska, and Lincoln, Nebraska, respectively, at the time the patents issued).  In fact, Farmobile's Complaint identifies no discernable connection of Farmobile to this District.

### B.  Farmers Edge and the Accused Products

Farmers Edge Inc. ("FEI") is a corporation organized under the laws of the province of Manitoba, Canada with its principal place of business in Winnipeg, Manitoba, Canada.  Declaration of Jeffrey Kowall ("Kowall Decl.") ¶ 2.  Farmers Edge (US) Inc. ("FEUS") is a corporation organized under the laws of Minnesota with its principal place of business in Omaha, Nebraska.  Declaration of Ron Osborne ("Osborne Decl.") ¶ 2.  Farmers Edge, which refers to both FEI and FEUS, is a leading digital agriculture company that develops data-driven technologies to help farmers and agricultural professionals improve the efficiency and yields of their farmlands.  *Id.* ¶ 4.  To do so, Farmers Edge provides high-quality services, such as field-level analyses and predictive modeling, as well as access to world-class farm data scientists.  *Id.*

Farmobile's complaint alleges that Farmers Edge's CanPlug devices and related FarmCommand software ("Accused Products") infringe the Asserted Farmobile Patents.  Compl. ¶ 14.  Those Accused Products were designed and developed by employees at FEUS's office located in Omaha, Nebraska.  Osborne Decl. ¶¶ 6, 10.  Further, decisions relating to the design and development of the Accused Products are made in Nebraska.  *Id.*  As such, Farmers Edge expects that certain employees who work in FEUS's Omaha, Nebraska office will have material knowledge of facts relevant to Farmobile's claims and Farmers Edge's defenses.  Farmers Edge has identified the following employees based in FEUS's Omaha office as having knowledge relevant to the research, design, and development of the Accused Products:

- Ron Osborne, Chief Technology Officer ("CTO"), is responsible for various aspects of

the design and development of CanPlugs and FarmCommand. As CTO, Mr. Osborne also works with the CEO, President, and other stakeholders regarding the development, sales, and marketing of the Accused Products. *Id.* ¶ 6.



- Geoffrey Ochsner, Head of Mobile Development, architects and manages ███████ ████████████████████████████████████████████████ ██████████████████ *Id.*

- Brad Grier, Vice President of Telematics and IoT, architects and manages ████ ████████████████████████████████████████████████ ██████████████████ *Id.*

- Kylee Wassenberg, Head of Product Management, manages ███████████ ██████████████████████████████████████████. *Id.*

- Charulatha Ravichandran, Lead Technical Business Analyst, fosters and maintains █████████████████████████████████████████████████ █████████████████████. *Id.*

- Manoj Regmi, Vice-President of Data Processing, architects and manages ██████ ████████████████████████. *Id.*

- Other senior and lead developers and engineers, such as Jeffrey Lind and Timothy Hemmer, who are involved ███████████████████████████████████ ████. *Id.*

Further, the source code for the Accused Products is accessible in the Omaha, Nebraska office, and documents relevant to the development, marketing, and sales of the Accused Products are maintained there. *Id.* ¶ 10. A third-party contract manufacturer who manufactures certain components of the accused CanPlug devices is also located in Nebraska. *Id.* ¶ 8.

There are no relevant Farmers Edge, Farmobile, or third-party witnesses known to be located in this District. *Id.* ¶¶ 11–12; Mammen Decl. ¶¶ 2–4. Although there are 10 FEUS

employees who reside and work remotely from Texas, all 10 reside outside of this District. Osborne Decl. ¶ 12. Neither FEI nor FEUS owns, leases, possesses, or controls any office buildings, warehouses, storage spaces, or any other type of physical location in this District, nor do they maintain any documents related to the Accused Products in any location in this District. *Id.* ¶¶ 10–11.

### C. Prior Litigation between Farmobile and Farmers Edge

Heath Gerlock, Randy Nuss, and Jason Tatge—the three named inventors of Farmobile's Asserted Patents—were previously employees of Crop Ventures, a company Farmers Edge acquired in 2014. *Farmers Edge Inc. v. Farmobile LLC*, No. 8:16-CV-00191-JFB-SMB (D. Neb.), First Amended Complaint, Dkt. 40 ¶¶ 13–14, 41, 46, 53, 58, (D. Neb. May 3, 2018). Crop Ventures researched and developed data technologies for agriculture, including an early version of FarmCommand and the CanPlug. *Id.* ¶¶ 4–7. In July 2013, Gerlock, Nuss, and Tatge left Crop Ventures and established Farmobile. *Id.* ¶ 58. In September 2013, they filed two provisional patent applications to which all of the Asserted Patents claim priority. *Farmers Edge Inc. v. Farmobile LLC*, No. 8:16-CV-00191-JFB-SMB, Order on Summary Judgment, Dkt. 407 at 17, 19 (D. Neb. May 3, 2018) ("Dkt. 407").

In April 2016, Farmers Edge sued Farmobile and the three named inventors in the District of Nebraska and alleged that all defendants misappropriated Farmers Edge's trade secrets; that Tatge, Gerlock, and Nuss breached agreements with Crop Ventures; and that the individual defendants violated state laws by taking Farmers Edge's intellectual property, including by filing U.S. Patent App. Pub. No. US 2015/0234767. *Farmers Edge Inc. v. Farmobile LLC*, No. 8:16-CV-00191-JFB-SMB, Dkts. 1, 42 (D. Neb. Apr. 29, 2016 & June 22, 2016) (Complaint and Amended Complaint, respectively). The case was assigned to Judge Joseph Bataillon, who granted summary judgment to Farmobile on Farmers Edge's trade-secret and state-law claims, concluding

that the technology was not a trade secret and that Farmers Edge had not shown the inventors had breached any agreements. *Farmers Edge Inc. v. Farmobile LLC*, No. 8:16-CV-00191-JFB-SMB, Order on Summary Judgment, Dkt. 408 at 14, 17 (D. Neb. May 3, 2018). Judge Bataillon did not decide whether inventorship of the Farmobile patent application was correct or whether Crop Ventures' founder (and Farmers Edge's current CTO) Ron Osborne should have been included as an inventor because at the time **"there [was] no U.S. Patent**." Dkt. 407 at 34. Judge Bataillon reached that conclusion because "[t]he Farmobile defendants represented to the court at oral argument that the [Farmobile] patent application was **abandoned** because of the discovery of prior art under U.S. patent rules." Dkt. 407 at 34; *see also id.* at 22–23 ("There is evidence that **Farmobile abandoned the patent** because it believed the patent could successfully be challenged as invalid."). The Asserted Patents are continuations of the application Farmobile told Judge Bataillon it had abandoned.

## III. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to another district court or division where it might have been brought." 28 U.S.C. § 1404(a). In evaluating a motion to transfer pursuant to § 1404(a), courts consider a nonexhaustive list of private- and public-interest factors to determine whether transfer is appropriate. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private-interest factors include: (1) "the relative ease of access to sources of proof;" (2) "the availability of compulsory process to secure the attendance of witnesses;" (3) "the cost of attendance for willing witnesses;" and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public-interest factors include: (1) "the administrative difficulties flowing from court congestion;" (2) "the local interest in having localized interests decided at home;" (3) "the familiarity of the forum with the law that will govern the case;" and (4)

"the avoidance of unnecessary problems of conflict of laws." *Id.* "[A] plaintiff's choice of venue is not a distinct factor in the venue transfer analysis." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 n.10 (5th Cir. 2008) ("*Volkswagen II*"); *see also In re Nintendo Co.*, 589 F.3d 1194, 1200 (Fed. Cir. 2009) (similar).

## IV.    ARGUMENT

Because each of the private- and public-interest factors either weighs in favor of transfer or is neutral, the District of Nebraska is "clearly [a] more convenient" forum than this District and transfer under § 1404(a) is warranted. *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013).

### A.    This Action Could and Should Have Been Brought in Nebraska

This action could have been brought in the District of Nebraska. *Volkswagen II*, 545 F.3d at 312; *see Viking Techs., LLC v. Assurant, Inc.*, No. 2:20-CV-00357-JRG, 2021 WL 3520756, at *2 (E.D. Tex. June 21, 2021) (explaining that whether an action could have been brought in the transferee forum involves subject-matter jurisdiction, venue, and personal jurisdiction).

The District of Nebraska has subject-matter jurisdiction over this case.  28 U.S.C. § 1338. It is also undisputed that venue is proper in the District of Nebraska for both FEI and FEUS.  For FEI, a corporation organized under the laws of Canada, venue is proper in any judicial district. *See In re HTC Corp.*, 889 F.3d 1349, 1352, 1354 (Fed. Cir. 2018).  For FEUS, venue is proper "in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1516 (2017); *see also Oyster Optics, LLC v. Coriant Am. Inc.*, No. 2:16-cv-1302, 2017 WL 4225202, at *5 (E.D. Tex. Sept. 22, 2017).  FEUS has a regular and established place of business in Nebraska, where it leases two offices in Omaha and Lincoln.  Osborne Decl. ¶¶ 10–11.  FEUS maintains 11 employees at the Lincoln hub and 8 employees at the Omaha hub, and both store FEUS inventory.  *Id.*  Some of

Farmers Edge's key decision-makers, including Ron Osborne (Chief Technology Officer) and Geoffrey Ochsner (Head of Mobile Development), work in the Omaha, Nebraska office. *Id.* ¶ 6. Thus, FEUS's Nebraska locations are regular and established places of business of FEUS. *See In re Cray Inc.*, 871 F.3d 1355, 1363 (Fed. Cir. 2017) ("[I]t must be a place of the defendant, not solely a place of the defendant's employee.") (emphasis omitted); *see also In re Google LLC*, 949 F.3d 1338, 1345 (Fed. Cir. 2020) (similar). Because the alleged acts of infringement occurred in Nebraska, and FEUS has two regular and established places of business there, venue is proper for FEUS in the District of Nebraska. 28 U.S.C. § 1400(b).

The District of Nebraska has specific personal jurisdiction over both FEI and FEUS. First, Nebraska has specific personal jurisdiction over FEI and FEUS based on FEI and FEUS's minimum contacts with Nebraska, including but not limited to operating its offices in Omaha and Lincoln and employing a third-party manufacturer in Nebraska. Osborne Decl. ¶¶ 6, 8, 10–11. These activities demonstrate that FEI and FEUS "purposefully directed [their] activities" to Nebraska. *NexLearn, LLC v. Allen Interactions, Inc.*, 859 F.3d 1371, 1376 (Fed. Cir. 2017); *HVLPO2, LLC v. Oxygen Frog*, LLC, 187 F. Supp. 3d 1097, 1105 (D. Neb. 2016).

Second, Farmobile's infringement claims relate to FEI and FEUS's activities in Nebraska. *See HollyAnne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1308 (Fed. Cir. 1999) ("[F]or there to be specific personal jurisdiction [in an infringement suit] … [the defendant would have to do] one of those listed activities in Nebraska."). The Accused Products identified by Farmobile were designed, developed, and marketed at FEUS's office in Omaha, Nebraska. Osborne Decl. ¶¶ 6, 10. Decisions relating to the design, development, and sales of the Accused Products are made in Nebraska by FEUS employees in conjunction with FEI employees. *Id.* ¶¶ 2, 6, 10. The two Nebraska hubs in Omaha and Lincoln store inventory of the Accused Products. *Id.* ¶¶ 10–11. And

FEI and FEUS employ a third-party contract manufacturer in Nebraska who manufactures certain components of the accused CanPlug devices. *Id.* ¶ 8.

Third, the assertion of jurisdiction by the District of Nebraska over FEI and FEUS is both "reasonable and fair" because there are no extenuating circumstances that would make jurisdiction unreasonable. *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010) (noting that "the third factor applies only sparingly."). Thus, all three factors demonstrate that the District of Nebraska has specific jurisdiction over FEUS.

### B. All Private-Interest Factors Favor Transfer

#### 1. The Relevant Evidence Is in Nebraska, Not in This District

The first private-interest factor, "the relative ease of access to sources of proof," relates to documentary evidence, other physical evidence, and custodians of such evidence. The Federal Circuit has explained that in patent infringement cases, "the bulk of the relevant evidence usually comes from the accused infringer" and "the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). As this Court has explained: "Notwithstanding well-known advances in technology and the digitization of data, the courts of appeals nonetheless continue to affirm the relevance and importance of the physical location of these sources." *Unicorn Energy GMBH v. Tesla, Inc.*, No. 2:20-CV-00338-JRG, 2021 WL 4034515, at *1 (E.D. Tex. Sept. 3, 2021).

Most of Farmers Edge's relevant documents and source code are located in Nebraska. Osborne Decl. ¶ 10. Notably, Farmers Edge's source code for the Accused Products is accessible in the Omaha hub. *Id*. Specifically, source code for the Accused Products is ███████████ ████. *Id*. While this factor mainly concerns documentary and physical sources of proof, the Federal Circuit has explained that the location of custodians is relevant to this factor because it "may bear on the ease of retrieval." *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2

(Fed. Cir. Nov. 15, 2021).  In this case, source code production will be the least burdensome in Omaha, Nebraska, where the source code is accessible.  Osborne Decl. ¶ 10.

Moreover, other documents related to the research, design, development, operation, marketing, and sales of the Accused Products are developed and maintained in Omaha, Nebraska. *Id*.  By contrast, no relevant documents are located in this District.  *Id.* ¶¶ 10–12; *see In re Netflix, Inc.*, No. 2022-110, 2022 WL 167470, at *3 (Fed. Cir. Jan. 19, 2022) (finding defendant's declaration adequately demonstrated evidence "relevant and material to the case" was located in transferee district in the form of source code; documents about research, design, and development of accused product; and financial documentation); *In re Apple Inc.*, No. 2021-181, 2021 WL 5291804, at *2 (Fed. Cir. Nov. 15, 2021) (overruling Western District of Texas's finding and concluding this factor favored transfer where all of relevant source code and documentary evidence were maintained in transferee district).  In fact, neither FEI nor FEUS owns, leases, possesses, or controls any physical location in this District.  Osborne Decl. ¶ 11.  In addition, neither Defendant has any employees in this District.  *Id.* ¶ 12.

Further, there is no evidence that Farmobile has any connection to or maintains any evidence in this District (or anywhere in the State of Texas).  Farmobile is headquartered in Leawood, Kansas, and Farmobile's documents are presumably located there.  Compl. ¶ 1.  The three named inventors of the Asserted Farmobile Patents (Heath Gerlock, Randy Nuss, and Jason Tatge) do not appear to be located in Texas.  Mammen Decl. ¶¶ 2–4; Mammen Exs. 1–3.  The first private-interest factor favors transfer.

2.      The District of Nebraska Has Compulsory Power over Non-Party
        Witnesses, Whereas This Court Does Not

The second factor relates to a court's ability to compel testimony of relevant witnesses.  "A court cannot compel nonparty witnesses to travel more than 100 miles, unless it is within the same

state and will not cause the witnesses to incur substantial travel expenses." *Affinity Labs of Tex. v. Samsung Elecs. Co.*, 968 F. Supp. 2d 852, 857 (E.D. Tex. 2013). "Party witnesses are generally deemed to be willing witnesses." *Unicorn Energy GMBH*, 2021 WL 4034515, at *2. But if third-party witnesses are overwhelmingly located within the subpoena power of only the transferee venue, "this factor favors transfer even without a showing of unwillingness for each witness." *In re Hulu, LLC*, No. 2021-142, -- F. App'x --, 2021 WL 3278194, at *4 (Fed. Cir. Aug. 2, 2021) (citations omitted).

Multiple party and non-party witnesses are located in Nebraska. Two of the three named inventors of the Asserted Patents, Heath Gerlock and Randy Nuss, are located there. Mammen Decl. ¶¶ 2–3; Mammen Exs. 1–2. Mr. Gerlock and Mr. Nuss are material witnesses with unique knowledge of facts relevant to this litigation. Notably, neither Mr. Gerlock nor Mr. Nuss appears to be currently employed by Farmobile. Mammen Exs. 1–2. Only the District of Nebraska has the power to compel these named inventors to appear at trial in this case. *See In re Apple*, 2021 WL 5291804, at *3 (finding this factor "weigh[ed] strongly in favor of transfer" where "potential third-party witnesses [were] subject to the subpoena powers of the [transferee district] but not the [transferor district]").

Additionally, former employees or contractors of Crop Ventures, Inc., FEI and FEUS's predecessor-in-interest, reside in Nebraska. Osborne Decl. ¶ 7. Specifically, Anthony Novero, Zach Shefferd, Sandi Barr, and Eric Whitcomb worked with Ron Osborne while at Crop Ventures to develop and commercialize FarmCommand and CanPlugs, and thus are likely to possess relevant and material information. *Id.* In addition, Communications Systems Solutions LLC, who is the contract manufacturer of certain components of the accused CanPlug device, is located in Lincoln, Nebraska. *Id.* ¶ 8. All of these relevant witnesses could be compelled to testify in

Nebraska but not in this District. *See In re Netflix, Inc.*, 2022 WL 167470, at *3–4 (third-party witnesses need not have "'important' testimony," only relevant and material information). Therefore, the second private-interest factor favors transfer.

3. Nebraska Is More Convenient for Potential, Relevant Witnesses

"The convenience of the witnesses" is the "single most important factor in the transfer analysis." *In re Genentech*, 566 F.3d at 1343–45; *Unicorn Energy GMBH*, 2021 WL 4034515, at *3 (stating same). In addition, as the Fifth Circuit explained in *Radmax*, "[w]hen the distance between an existing venue for trial [] and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." 720 F.3d at 288–89.

The Accused Products were designed, developed, and marketed by Farmers Edge employees that are based in the Omaha, Nebraska office. Osborne Decl. ¶¶ 6, 10. Farmers Edge has identified at least eight employees based in Omaha, Nebraska that Farmers Edge expects will have knowledge of facts relevant to this dispute, while neither Defendant has any employees who reside in this District. *Id.* ¶ 6. Given the location of Farmers Edge's relevant witnesses in Nebraska, the cost and inconvenience to Farmers Edge of making these witnesses available to testify during fact discovery and at trial would be substantially higher if the case moves forward in this District. Traveling to Marshall, Texas would require Farmers Edge's witnesses to travel around 700 miles and incur significant travel expenses. Mammen Decl. ¶ 9; Mammen Ex. 8. By contrast, the Farmers Edge office in Omaha is only around 11 miles from the Nebraska courthouse. Mammen Ex. 9. It is an "obvious conclusion" that it is more convenient for these witnesses to testify close to home. *See Volkswagen II*, 545 F.3d at 317.

As noted, two of the three named inventors of the Asserted Patents reside in Nebraska. Mammen Decl. ¶¶ 2–4; Mammen Exs. 1–3. During the 2016 litigation, neither Farmobile nor the

named inventors argued venue was improper in Nebraska or requested transfer of the case elsewhere. *Farmers Edge Inc. v. Farmobile LLC*, No. 8:16-CV-00191-JFB-SMB (D. Neb.). Farmobile's other witnesses will likely come from Kansas, where Farmobile is headquartered. Compl. ¶ 1. Those witnesses would benefit from having to travel roughly 300 miles fewer to reach the District of Nebraska courthouse in Omaha than to reach this District. Mammen Decl. ¶¶ 11– 12; Mammen Exs. 10–11. Nebraska is clearly more convenient for both Farmers Edge's and Farmobile's potential relevant witnesses. *See In re Google LLC*, 2021 WL 5292267, at *3 (finding that this factor "weigh[ed] in favor of transfer" where several potential witnesses resided in transferee district and none resided in the transferor district). The third private-interest factor strongly favors transfer.

4. The District of Nebraska Is Already Familiar with the Parties, Named Inventors, and Accused Products

With regard to "other practical problems that make trial of a case easy, expeditious and inexpensive," this factor addresses concerns based on "judicial economy." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 (Fed. Cir. 2010); *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-00118-JRG, 2019 WL 6344267, at *3 (E.D. Tex. Nov. 27, 2019).

Here, no practical problems are presented by transferring this case to Nebraska. With the exception of these concurrently filed motions, neither this Court nor the parties have taken significant action. In addition, neither Farmobile nor the named inventors argued venue was improper in Nebraska or requested transfer of the case elsewhere in the 2016 Nebraska litigation. *See generally Farmers Edge Inc. v. Farmobile LLC*, No. 8:16-CV-00191-JFB-SMB (D. Neb.). Given the prior litigation in Nebraska, if this case is transferred to Nebraska, Farmers Edge would be required under Nebraska's local rules to notify the court of the 2016 litigation because it "involve[d] some or all of the same issues of fact." D. Neb. L.R. 1.4(4)(C)(iii). As a result, Judge

Joseph F. Bataillon, "the district judge who handled the earlier [] closed case," might be assigned to the transferred case. D. Neb. L.R. 1.4(4)(B). Nebraska's and Judge Bataillon's familiarity with the parties, named inventors, and Accused Products would likely make adjudication of this dispute easier, more expeditious, and less expensive. The fourth private-interest factor favors transfer.

### C. All Public-Interest Factors Favor Transfer or Are Neutral

#### 1. Court Congestion Is Neutral

"To the extent that court congestion is relevant [to a transfer motion], the speed with which a case can come to trial and be resolved may be a factor." *In re Genentech*, 566 F.3d at 1347. However, "a court's general ability to set a fast-paced schedule is not particularly relevant to" the court congestion factor. *In re DISH Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *4 (Fed. Cir. Oct. 21, 2021) (quoting *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021)). Because this factor is frequently the "most speculative," where "other relevant factors weigh in favor of transfer or are neutral, 'then the speed of the transferee district court should not alone outweigh all of those other factors.'" *In re Apple*, 2021 WL 5291804, at *4 (quoting *In re Genentech*, 566 F.3d at 1347).

According to Federal Court Management statistics for the 12-month period ending March 31, 2020, this District had 635 pending cases per judgeship, while Nebraska had 404 cases. Mammen Decl. ¶ 5; Mammen Ex. 4. The average time from filing to trial for civil cases was 17.7 months in this District, while it was 22.3 months in the District of Nebraska. *Id.* According to Lex Machina statistics, between 2017 and 2021, the average time to trial in this District was 598 days, while it was 754 days in the District of Nebraska. Mammen Decl. ¶¶ 6–7; Mammen Exs. 5–6. Even if these statistics suggest that it is possible this case could reach trial slightly sooner in this District than in Nebraska, that fact is "not particularly relevant to" the court congestion factor. *DISH Network*, 2021 WL 4911981, at *4. This factor should be found as neutral.

### 2. Nebraska Has a Local Interest in This Case

This factor analyzes the "significant connections between a particular venue and *the events that gave rise to a suit*." *In re Apple*, 2021 WL 5291804, at *5 (internal quotations omitted) (emphasis in original). This factor considers the relationship between the dispute and the community from which the jury pool will be drawn, as "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (citations omitted). Importantly, "the sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Toa Techs., Inc.*, 543 F. App'x 1006, 1009 (Fed. Cir. 2013).

Here, Farmers Edge's main offices in the U.S. are in Nebraska, and the Accused Products were designed, developed, supported, and marketed there. Osborne Decl. ¶¶ 2, 6, 10; *supra* Section II.B. These circumstances give Nebraska citizens a "greater localized interest" in this case. *See In re Atlassian Corp. PLC*, No. 2021-177, 2021 WL 5292268, at *3 (Fed. Cir. Nov. 15, 2021) (finding that the Western District of Texas erred in its analysis of local interest factor, instead finding that transferee district had "greater localized interest in the dispute" because "at least one of the accused software products was substantially developed by engineers and managers who live in and work from the [transferee district]"); *DISH Network*, 2021 WL 4911981, at *3 (stating that "when fairly applied, the local interest factor also favors transfer" based on transferee district's "significant connection to the design and development of the accused features."); *Unicorn Energy GMBH*, 2021 WL 4034515 at *5 (concluding that there was local interest where defendant was headquartered in transferee district "and the design, development, management, and decision making related to the Accused Products have historically been centered there," even though infringing sales and employees were located in transferor district).

By contrast, Farmobile does not appear to have any meaningful connection to this District.

*See Oyster Optics*, 2017 WL 4225202, at *8 (no local interest where defendant's "largest" [R&D facility] was in transferee district and plaintiff "possesses no facilities or employees in the [transferor] district"). Farmobile's Complaint reveals no connection between Farmobile and this District. Farmobile's website does not indicate that Farmobile possesses any facilities or has employees located in this District. Mammen Decl. ¶ 8; Mammen Ex. 7. Thus, it would be burdensome to impose jury duty "upon the people of [the Eastern District of Texas,] which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206. The second public-interest factor favors transfer.

### 3. Factors 3 and 4 Are Neutral

The remaining two public-interest factors are neutral. "Patent claims are governed by federal laws, and as such both [courts are] capable of applying patent law to infringement claims." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (internal quotations omitted) (alteration in original). Because this District and Nebraska are equally capable of applying the relevant law, Factor 3 is neutral. *Id.* Regarding Factor 4, there are no applicable conflicts of law or foreign law issues that are readily apparent from the Complaint, making that factor neutral as well. *See Uniloc USA, Inc. v. Apple Inc.*, No. 2:17-CV-00258-JRG, 2017 WL 11553227, at *10 (E.D. Tex. Dec. 22, 2017).

## V. CONCLUSION

Because this case could have been brought in the District of Nebraska and the public- and private-interest factors either favor transfer or are neutral, Farmers Edge, Inc. and Farmers Edge (US) Inc. respectfully request that the Court grant their motion to transfer this case to the District of Nebraska.

Dated:  January 28, 2022

Respectfully submitted,

*/s/ Jeanne M. Heffernan, with permission by*

*Michael E. Jones*

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
POTTER MINTON, P.C.
110 N. College Ave., Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

Jeanne M. Heffernan, P.C.
NY State Bar No. 4104055
jheffernan@kirkland.com
KIRKLAND & ELLIS LLP
401 Congress Avenue
Austin, TX 78701
Tel.: (512) 678-9100
Fax: (512) 678-9101

Gregg F. LoCascio, P.C.
  *admitted pro hac vice*
Nathan S. Mammen
  *admitted pro hac vice*
gregg.locascio@kirkland.com
nathan.mammen@kirkland.com
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Tel.: (202) 389-5000
Fax: (202) 389-5200

*Counsel for Defendants Farmers Edge, Inc.*
*and Farmers Edge (US) Inc.*

16

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via electronic mail on January 28, 2022.

I also hereby certify that all counsel of record who have consented to electronic service are being served with a notice of filing of this document, under seal, pursuant to L.R. CV-5(a)(7) on January 28, 2022.

*/s/ Michael E. Jones*
Michael E. Jones

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that counsel has complied with the meet and confer requirement in L.R. CV-7(h) and (i), and that the foregoing motion remains opposed by Plaintiff. Nathan S. Mammen, counsel for Defendant, met and conferred by telephone on January 27, 2022 with Jonathan Kagan, counsel for Plaintiff. The parties were unable to reach agreement as to the relief sough in the present motion. As such, discussions have conclusively ended in an impasse, leaving an open issue for the court to resolve.

*/s/ Nathan S. Mammen , with permission by*
*Michael E Jones*

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I certify that the foregoing document is authorized to be filed under seal pursuant to the Unopposed Motion to File Under Seal filed concurrently in this case.

*/s/ Michael E. Jones*
Michael E. Jones