## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| FARMOBILE LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| | § | CIVIL ACTION NO. 2:21-CV-00411-JRG |
| v. | § | |
| | § | |
| FARMERS EDGE INC., FARMERS EDGE (US) INC., | § | |
| | § | |
| | § | |
| *Defendants*. | § | |

### <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is Defendants Farmers Edge Inc. ("FEI") and Farmers Edge (US) Inc.'s ("FEUS") (collectively, "Farmers Edge") Motion to Transfer to the District of Nebraska Pursuant to 28 U.S.C. § 1404(a) (the "Motion"). (Dkt. No. 18). In the Motion, Farmers Edge requests that the Court transfer the above-captioned case to the District of Nebraska under 28 U.S.C. § 1404(a). Having considered the Motion, the related briefing, and the relevant authorities, the Court concludes that the Motion should be **GRANTED**.

Also, before the Court are FEUS's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3) (Dkt. No. 21); Farmers Edge's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (*Id.*); and Farmers Edge's Motion to Stay Non-Venue Related Proceedings Pending Resolution of Defendants' Motion to Dismiss and Motion to Transfer (Dkt. No. 32). In light of the Court's ruling on the Motion and for the reasons discussed herein, the Court finds that FEUS's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3) (Dkt. No. 21) and Farmers Edge's Motion to Stay Non-Venue

Related Proceedings Pending Resolution of Defendants' Motion to Dismiss and Motion to Transfer (Dkt. No. 32) should be **DENIED AS MOOT**.[1]

## I.      BACKGROUND

Plaintiff Farmobile LLC ("Farmobile") filed a multi-patent complaint against Farmers Edge on November 3, 2021.  (Dkt. No. 1).  Farmobile alleges that Farmers Edge infringes U.S. Patent Nos. 11,126,937 (the "'937 Patent"); 11,151,485 (the "'485 Patent"); 10,963,825 (the "'825 Patent"); 11,107,017 (the "'017 Patent"); and 11,164,116 (the "'116 Patent") (collectively, the "Asserted Patents").  (*Id.* ¶ 2).  In its Complaint, Farmobile states that the Asserted Patents "generally relate to automated systems and methods for (1) capturing, processing and sharing point-by-point farming data; (2) collecting farming operating data using passive data collection devices attached to farming equipment while the farming equipment operates; and (3) processing and sharing the farming operation data via an online farming data exchange system or server." (*Id.* ¶ 22).

Farmobile is a limited liability company organized and existing under the laws of the State of Kansas and having a principal place of business in Leawood, Kansas.  (*Id.* ¶ 1).  FEI is a corporation organized under the laws of the province of Manitoba, Canada, with its principal place of business in Winnipeg, Manitoba.  (*Id.* ¶ 3; Dkt. No. 18-22 ¶ 2).  FEUS is incorporated under the laws of Minnesota.  (Dkt. No. 1 ¶ 4; Dkt. No. 18-13 ¶ 2).

The parties dispute the location of FEUS's principal place of business.  In its Complaint, Farmobile states that FEUS maintains a *regular* place of business in North Saint Paul, Minnesota. (Dkt. No. 1 ¶ 4).  In the Motion, Farmers Edge contends that FEUS's principal place of business is in Omaha, Nebraska.  (Dkt. No. 18 at 7).  In response, Farmobile contends that it was unable to

---

[1] The Court further finds that this Order has no effect on Farmers Edge's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (Dkt. No. 21) and should remain as pending on the docket.

locate a single record with Nebraska's Secretary of State listing Omaha as FEUS's principal office. (Dkt. No. 53 at 16). In fact, Farmobile argues that government records show that FEUS's principal place of business is in Ames, Iowa, as allegedly evidenced by filings in the office of the Iowa Secretary of State. (*Id.* (citing Dkt. No. 53-22; Dkt. No. 53-23; Dkt. No. 53-24; Dkt. No. 53-25; Dkt. No. 53-26)). In its reply, Farmers Edge does not address whether FEUS's principal place of business is in Ames, Iowa. (*See* Dkt. No. 58). In light of the parties' dispute, which must be resolved in Farmobile's favor, the Court finds that for purposes of this Motion, FEUS's principal place of business is located in Ames, Iowa. *See Hammers v. Mayea-Chang*, No. 2:19-cv-181, 2019 WL 6728446, at *4 (E.D. Tex. Dec. 11, 2019) ("When deciding a motion to transfer under § 1404(a), the Court may consider undisputed facts outside of the pleadings, such as affidavits or declarations, but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party.").

## II.    LEGAL STANDARD

In evaluating a motion to transfer pursuant to § 1404(a), the Court considers the Fifth Circuit's non-exhaustive list of private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private interest factors include (1) "the relative ease of access to sources of proof"; (2) "the availability of compulsory process to secure the attendance of witnesses"; (3) "the cost of attendance for willing witnesses"; and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public interest factors include (1) "the administrative difficulties flowing from court congestion"; (2) "the local interest in having localized interests decided at home"; (3) "the familiarity of the forum with the law that will govern the case"; and (4) "the avoidance of unnecessary problems of conflict of laws." *Id.*

To support a claim for transfer under § 1404(a), a movant must demonstrate that the transferee venue is "clearly more convenient" than the current District.  *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*").  The elevated burden to show that the transferee forum is "clearly more convenient" reflects the respect owed to the Plaintiff's choice of forum.  *In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010).

## III.   DISCUSSION

The threshold inquiry to a motion to transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d at 203.  The parties do not dispute that this case could have been brought in the District of Nebraska.  (Dkt. No. 18 at 11; Dkt. No. 53 at 6).  Accordingly, the Court finds that the threshold question is satisfied and next turns to the convenience factors below.

### A.    Private Interest Factors

#### 1.    The Relative Ease of Access to Sources of Proof

The first private interest factor this Court analyzes is the relative ease of access to sources of proof, including documentary and other physical evidence.  *See Volkswagen II*, 545 F.3d at 315. Notwithstanding well-known advances in technology and the digitization of data, courts nonetheless continue to consider the relevance and importance of the physical location of these sources.  *See id.* at 316; *In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009).  Parties must specifically identify and locate sources of proof and explain their relevance.  *Utterback v. Trustmark Nat'l Bank*, 716 F. App'x 241, 245 n.10 (5th Cir. 2017); *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-cv-513, 2018 WL 2329752, at *5 (E.D. Tex. May 22, 2018).

Farmers Edge argues that this factor favors transfer because most of its relevant documents and source code are located in Nebraska.  (Dkt. No. 18 at 13).  Farmers Edge asserts that source

code for the Accused Products is created and tested in Omaha.  (*Id.*).  Farmers Edge states, "[O]ther documents related to the research, design, development, operation, marketing, and sales of the Accused Products are developed and maintained in Omaha, Nebraska."  (*Id.*).  Farmers Edge contends that it has no relevant documents or employees in the Eastern District of Texas (the "EDTX").  (*Id.* at 14).  Indeed, Farmers Edge argues that Farmobile also has no connection to the EDTX, so its documents are presumably located at its headquarters in Leawood, Kansas.  (*Id.*).

In response, Farmobile argues that due to prior patent litigation in Canada, both parties should have nearly all relevant documents, so the original location of documents is irrelevant to this factor.  (Dkt. No. 53 at 7).  Farmobile claims that it already has possession of Farmers Edge's source code via Farmers Edge's expert, Dr. George Edwards.  (*Id.* at 8).  Farmobile asserts that Farmers Edge uses Google cloud storage for its documents and information, so accessibility is not limited to Omaha, and the physical servers are located in Iowa and not Nebraska.  (*Id.* at 7–8).  Farmobile contends that while some source code is compiled in Nebraska (1.4% total), almost all of it is written outside of Nebraska in Ukraine and Canada.  (*Id.* at 9).  Farmobile argues that the actual source of information is likely in Alberta, Canada, where the prior Chief Technology Officer ("CTO"), Kevin Grant, and 75 Farmers Edge employees who code are located.  (*Id.* at 10).

In its reply, Farmers Edge argues that it is irrelevant that the majority of code is developed outside of Nebraska because the case cannot be transferred to Canada or Ukraine.  (Dkt. No. 58 at 5).  Farmers Edge contends that the standard is not absolute ease of access but relative ease of access, and Farmobile does not show that relevant evidence is accessible in the EDTX.  (*Id.* at 5).

The Court agrees with Farmers Edge that this factor favors transfer to the District of Nebraska.  Farmobile identifies no sources of proof in the EDTX.  In fact, Farmobile attributes no weight to this factor in its briefing.  The majority of identified documents and sources of proof are

5

located in or near Omaha, Nebraska.  (*See* Dkt. No. 18-13 ¶ 10).  Although the parties dispute where sources of proof are more easily accessible, they do not identify any documents located in the EDTX.  Farmobile points to numerous other locations that are more convenient than Omaha to access relevant sources of proof; however, the standard that this Court must apply is "*relative* ease of access, not *absolute* ease of access."  *In re Radmax, Ltd.*, 720 F.3d 285, 288 (5th Cir. 2013) (emphasis in original).[2]  Farmobile notes that access to information need not be limited to Omaha because the information is accessible electronically, but as the Court has previously noted, the physical location of sources of proof remains relevant to deciding factor.  *See Volkswagen II*, 545 F.3d at 315; *see also Genentech*, 566 F.3d at 1346.  Given that the majority of the sources of proof are either located in or near Nebraska, and none have been identified in the EDTX, the Court concludes that this factor favors transfer.  *See In re TS Tech. Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (weighing this factor in favor of transfer when all of the physical and documentary evidence was located near the transferee venue and none was located in Texas).

2.     The Availability of Compulsory Process to Secure the Attendance of Witnesses

The second private interest factor considers the transferor and transferee courts' subpoena power.  Federal district courts have the absolute power to compel attendance of a trial, hearing, or deposition "within 100 miles of where the person resides, is employed, or regularly transacts business in person."  F*ED*. R. C*IV*. P. 45(c)(1)(A).  Federal district courts have trial subpoena power over a person "within the state where the person resides, is employed, or regularly transacts business in person, if the person (i) is a party or a party's officer; or (ii) is commanded to attend a trial and would not incur substantial expense."  F*ED*. R. C*IV*. P. 45(c)(1)(B).  "[W]hen there is no indication that a non-party

---

[2] The ultimate inquiry to determine "whether a defendant has met [its] burden, the court weighs the public and private interest factors to compare the relative convenience *between the venues*."  *In re Apple, Inc.*, No. 2021-181, 2021 WL 5291804, at *5 (Fed. Cir. Nov. 15, 2021) (emphasis added) (citing *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1319 (Fed. Cir. 2021)).

witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, No. 2018-149, 2018 WL 4692486, at *3 n.3 (Fed. Cir. Sept. 25, 2018) (citing *AGIS Software*, 2018 WL 2329752, at *6).

Farmers Edge argues that this factor favors transfer because two of the three named inventors of the Asserted Patents, Heath Gerlock and Randy Nuss, are located in Nebraska and would be subject to the District of Nebraska's subpoena power.  (Dkt. No. 18 at 15).  Farmers Edge contends that other witnesses include former employees or contractors of Crop Ventures, Inc., Farmers Edge's predecessor-in-interest, reside in Nebraska:  Anthony Novero, Zach Shefferd, Sandi Barr, and Eric Whitcomb.  (*Id.*).  Farmers Edge argues that Communications Systems Solutions LLC, who is the contract manufacturer of certain components of the accused CanPlug device, is located in Lincoln, Nebraska, and may have relevant witnesses who could testify.  (*Id.*).

Farmobile contends that this factor is neutral.  (Dkt. No. 53 at 11).  Farmobile argues that although Named Inventor, Mr. Nuss, resides in Nebraska, he works for Farmobile and is willing to testify in Marshall.  (*Id.* at 11).  Farmobile also argues that Named Inventor, Mr. Gerlock, resides in Nebraska and no longer works for Farmobile, but he is willing to testify in Marshall.  (*Id.* at 11). Farmobile alleges that the former Crop Ventures employees may be called but Farmers Edge does not specify the subject-matter of their testimony.  (*Id.* at 11–12).

The Court finds that this factor favors transfer.  Farmers Edge identifies four former employees or contractors of Crop Ventures, Inc. who reside in Nebraska.  (Dkt. No. 18 at 15). Farmobile names no witnesses within the subpoena power of the EDTX.  Farmobile merely argues that Messrs. Nuss and Gerlock, who reside in Nebraska, are willing to testify.  (Dkt. No. 53 at 11). The Court does not consider the location of willing witnesses, such as Messrs. Nuss and Gerlock, under this factor.  Nonetheless, the Court is not persuaded that their absence from any analysis of this factor merits disregarding other willing witnesses situated in Nebraska.

7

### 3.   The Cost of Attendance for Willing Witnesses

"When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204–05. "The convenience of the witnesses is probably the single most important factor in transfer analysis." *Genentech*, 566 F.3d at 1343 (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 329 (E.D.N.Y. 2006)).

Farmers Edge argues that this factor strongly favors transfer because it identifies eight employees located in Omaha, Nebraska, who are willing to testify:  Ron Osborne, CTO; Geoffrey Oschsner, Head of Mobile Development; Brad Grier, Vice President of Telematics and IoT; Kylee Wassenberg, Head of Product Management; Charulatha Ravichandran, Lead Technical Business Analyst; Manoj Regmi, Vice-President of Data Processing; and Jeffrey Lind and Timothy Hemmer, senior and lead developers and engineers.  (Dkt. No. 18 at 8, 16, 17).  Farmers Edge argues that Nebraska would be more convenient for two of the three Named Inventors, Messrs. Nuss and Gerlock, because they reside there.  (*Id.* at 16–17).  Further, Farmers Edge asserts that Farmobile's witnesses will likely come from Kansas, which would be 300 miles closer to the District of Nebraska than the EDTX.  (*Id.* at 17).

Farmobile contends that this factor is neutral or slightly favors transfer to Nebraska. (Dkt. No. 53 at 13).  Farmobile argues that any inconvenience to Farmobile's potential witnesses is irrelevant.  (*Id.*).  Farmobile claims that the vast majority of Farmers Edge's potential witnesses are located in Canada, and Farmers Edge has only 19 employees in the Nebraska hubs, which is less than 4% of all Farmers Edge employees.  (*Id.* at 14).  Farmobile argues that the witnesses who are expected to testify are all Canadian including, for example, outgoing CEO Wade Barnes, President Anita Wortzman, and Vice President of Digital Agronomy Jamie Denbow.   (*Id.*).

8

Farmobile contends that the convenience to the traveling Canadian witnesses is neutral because they will need to take multiple flights regardless of travel to either Nebraska or Texas.  (*Id.*).

The Court finds that this factor favors transfer.  Farmers Edge has provided an extensive list of eight employees who are located in Omaha, Nebraska. (Dkt. No. 18 at 8, 16).  Farmers Edge and Farmobile agree that the Named Inventors, Messrs. Nuss and Gerlock, reside in Nebraska and are willing to testify.  (*Id.* at 16–17; Dkt. No. 53 at 11).  Farmobile fails to identify any willing witnesses located in the EDTX or substantially closer to the EDTX than to Nebraska.  Instead, Farmobile claims that the vast majority of witnesses are Canadian and Farmers Edges's CTO, Mr. Osborne, will be the only Nebraska witness inconvenienced by travel to the EDTX.  (Dkt. No. 13 at 13–14).  Given that Farmers Edge identified witnesses located in the District of Nebraska and none have been identified here, this factor weighs in favor of transfer.

### 4.    All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive

The fourth private interest factor addresses concerns rationally based on judicial economy. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *6 (E.D. Tex. Nov. 27, 2019); *see also Vistaprint*, 628 F.3d at 1346.

Farmers Edge argues that this factor weighs in favor of transfer because the Honorable Joseph F. Bataillon oversaw prior litigation between the parties in 2016 and transfer would render a more expeditious and less expensive resolution.  (Dkt. No. 18 at 17–18).  Farmers Edge further argues that this case remains early in litigation, and the parties have not taken significant action or expense at this stage.  (*Id.* at 17).

Farmobile contends that this factor is neutral.  (Dkt. No. 53 at 14).  Farmobile concedes that the prior case before Judge Bataillon involved both the aforementioned parties and some overlap in relevant documents.  (*Id.*; Dkt. No. 62 at 5).  However, Farmobile argues that the prior

litigation was a trade secret case and did not contain any questions of patent invalidity or infringement, and thus, any benefit of Judge Bataillon presiding over this case is minimal.  (Dkt. No. 62 at 5–6).

The Court concludes that this factor slightly weighs in favor of transfer.  Based on Judge Bataillon's prior litigation experience with the parties, he appears intimately familiar with the technology, the provisional patent applications, documents, and underlying factual issues.  *See Farmers Edge Inc. v. Farmobile, LLC*, No. 8:16-cv-191, 2018 WL 2869003 (D. Neb. May 3, 2018), *aff'd*, 970 F.3d 1027 (8th Cir. 2020).[3]  Although the theories put forward in the prior suit are different, "there will be significant overlap and a familiarity with the patents could preserve time and resources."  *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("*Volkswagen III*").  Although not dispositive, the Court notes that the parties and the Court have not expended a significant amount of time and resources, to date, given that major hearing dates remain months away—the claim construction hearing is scheduled for December 14, 2022, the pretrial conference is scheduled for May 1, 2023, and trial is set for June 5, 2023.  (Dkt. No. 42 at 1, 4).  Therefore, the early stage of this case contributes to the slight weight afforded to this factor, but at whatever weight, it favors transfer.

### B.      Public Interest Factors

The parties agree that the familiarity-of-the-forum-with-the-law and conflict-of-laws factors are neutral.  (Dkt. No. 18 at 20; Dkt. No. 53 at 16).  The only public interest factors in dispute are the court-congestion and local-interest considerations.

---

[3] The Asserted Patents each claim priority to U.S. Provisional Patent Application Nos. 61/881,320 (the "'320 Patent") and. 61/881,326 (the "'326 Patent").  *Id.* at *10; (Dkt. No. 1-1 at 3; Dkt. No. 1-2 at 3; Dkt. No. 1-3 at 3; Dkt. No. 1-4 at 3; Dkt. No. 1-5 at 3).

### 1.    The Administrative Difficulties Flowing from Court Congestion

Farmers Edge attributes this factor neutral weight.  (Dkt. No. 18 at 18).  Farmers Edge contends that speed to trial may be a factor, but "'a court's general ability to set a fast-paced schedule is not particularly relevant to' the court[-]congestion factor."  (*Id.* (quoting *In re DISH Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *4 (Fed. Cir. Oct. 21, 2021)).  Farmers Edge asserts that the average time to trial is faster in the EDTX than the District of Nebraska.  (*Id.*) Specifically, Farmers Edge claims that the Federal Court Management statistics, calculated for the 12-month period ending March 31, 2020, evidences an average time to trial for civil cases of 17.7 months in the EDTX and 22.3 months in the District of Nebraska.  (*Id.*).  Farmers Edge also provides Lex Machina statistics from 2017 to 2021, that provides an average time to trial of 598 days (approximately 49.8 months) in the EDTX and 754 days (approximately 62.8 months) in the District of Nebraska.  (*Id.*).

Farmobile contends that the significant difference between trial times weighs heavily against transfer.  (Dkt. No. 53 at 15).  Farmobile argues that Farmer Edge's average time to trial of 22.3 months for the District of Nebraska is an outlier and that the average of all 12-month periods provides an average time to trial of 19.7 months in the EDTX and 28.5 months in the District of Nebraska.  (*Id.*).

The Court finds that this factor weighs against transfer.  The Federal Circuit has noted that the speed with which a case can come to trial may be a factor, *Genentech*, 566 F.3d at 1347, but the court-congestion factor "should not alone outweigh th[e] other factors" when the other factors "weigh in favor of transfer or are neutral," *Juniper*, 14 F.4th at 1319 (citing *id.*).  This case would certainly proceed to trial faster in the EDTX; however, this factor is not dispositive by itself as the other factors either favor transfer or are neutral.

2.     The Local Interest in Having Localized Interests Decided at Home

Farmers Edge argues that this factor favors transfer as Nebraska has a greater localized interest because its main offices and the Accused Products were developed and designed in Omaha. (Dkt. No. 18 at 19, 20).  Farmers Edge also argues that Farmobile has no meaningful connection to the EDTX.  (*Id.* at 19).

Farmobile contends that this factor is neutral.  (Dkt. No. 53 at 15).  Farmobile disputes Nebraska's interest in the lawsuit because only 4% of Farmers Edge's employees report to the Nebraska hubs and less than 1.4% of source code for the Accused Products is developed there. (*Id.* at 16).  Farmobile also argues that Nebraska's interest is minimal because business filings appear to suggest that FEUS's principal office is not Nebraska, but it is actually located in Iowa. (*Id.*).

The Court finds that to some extent this factor weighs in favor of transfer.  The District of Nebraska has a greater localized interest than the EDTX because Farmers Edge is connected via its offices and at least some of the source code for the Accused Products was developed in Nebraska.  (Dkt. No. 53-1 ¶ 17; Dkt. No. 53-2; Dkt. No. 53 at 13; Dkt. No. 53-19 at 7:14-19).  In weighing transfer between two venues, the Federal Circuit has held that a party's "general presence in a particular district" cannot alone "give that district a special interest in the case."  *In re Apple, Inc.*, No. 2021-181, 2021 WL 5291804, at *5 (Fed. Cir. Nov. 15, 2021) (quoting *In re Google LLC*, No. 2021-171, 2021 WL 4592280, at *5 (Fed. Cir. Oct. 6, 2021)).  Here, Farmers Edge does not have a general presence in the EDTX to counterbalance its presence in the District of Nebraska. Therefore, where a movant has a local interest in the transferee venue and no presence in the transferor venue, this factor favors transfer.

### C.      Totality of the Factors

The majority of the public and private factors favor transfer.  Each of the private interest factors and the localized-interest factor weigh in favor of transfer.  The only factor that disfavors transfer is the court-congestion consideration; however, the Court has already noted that this factor is not alone dispositive.  Considering the collective weight of the factors, Farmers Edge has sufficiently carried its burden to show that the District of Nebraska is clearly more convenient.

### D.      Farmobile's Alternative Request to Transfer to the District of Kansas

Farmobile alternatively requests that this case be transferred to the District of Kansas. (Dkt. No. 53 at 17).  Farmobile then proceeds to conduct an analysis under each of the public and private interest factors pursuant to § 1404.  (*See id.* 17–19).

In its reply, Farmers Edge argues that this case should not be transferred to the District of Kansas because (1) Farmobile could have instead dismissed this action and refiled in Kansas; (2) "a plaintiff's choice of venue is not a distinct factor in the venue transfer analysis"; and (3) "Farmers Edge is not required to show that Nebraska is a clearly more convenient forum than any other venue . . .  where Farmobile could have filed its case."  (Dkt. No. 58 at 8).  Farmers Edge further argues that Farmobile did not provide notice of this request to Farmers Edge, and Farmers Edge was unable to perform venue discovery.  (*Id.*).

In its sur-reply, Farmobile argues that it provided notice to Farmers Edge about its request for alternative venue in March, and Farmers Edge already requested and received discovery about Farmobile's Kansas operations.  (Dkt. No. 62 at 6).

The Court agrees with Farmers Edge.  Farmobile could have filed this case in the District of Kansas but instead chose to filed it here.  *See Volkswagen II*, 545 F.3d at 315 (noting a plaintiff's privilege of choosing venue).  Further, Farmobile fails to raise its request for alternative venue in

13

an appropriate motion and instead first raises such relief in its response brief.  Accordingly, Farmobile's request for transfer to the District of Kansas is denied.

## IV.     CONCLUSION

For the reasons stated herein, the Court finds that Farmers Edge's Motion should be and hereby is **GRANTED**.  Further, the Court finds that FEUS's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3) (Dkt. No. 21) and Farmers Edge's Motion to Stay Non-Venue Related Proceedings Pending Resolution of Defendants' Motion to Dismiss and Motion to Transfer (Dkt. No. 32) should be and hereby are **DENIED AS MOOT**.

## V.     ORDER

It is hereby **ORDERED** that the above-captioned case is **TRANSFERRED** to the District of Nebraska.

### So Ordered this

**Jul 7, 2022**

_____
RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE

14